STATE OF CONNECTICUT *v.* HAROLD O. CHURCH

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE NO. CR 17-4671

Argued October 24—decided December 23, 1966

*Julius Watstein,* of Bristol, for the appellant (defendant).

*Francis M. McDonald,* deputy chief prosecuting attorney, for the appellee (state).

DEARINGTON, J. The defendant was convicted of policy playing in violation of § 53-298 of the General Statutes in a trial to the jury and has appealed

from the judgment. He has assigned error in the court's failure to correct the finding; in certain rulings on evidence; in the charge to the jury; in the legality of the sentence; and in the denial of the defendant's motion for a directed verdict, motion for judgment notwithstanding the verdict and motion to set aside the verdict. At the conclusion of the state's case the defendant rested.

The defendant first seeks to have the finding corrected in numerous particulars, claiming that sixteen paragraphs should have been stricken because the facts appearing therein were remote and were found without credible evidence and in language of doubtful meaning. A finding in a jury case in the Circuit Court serves a limited purpose. It is a mere narrative of the facts which are claimed to have been proved and is designed to test the correctness of the charge. It should not be detailed or voluminous but confined strictly to the facts bearing on the questions raised. Practice Book §§ 996, 999, 1006; *State* v. *McCoy*, 4 Conn. Cir. Ct. 109, 111. "If there is no evidence affording a reasonable basis for a claim of proof, the claim may be stricken out; . . . but a correction will not be made merely to secure meticulous accuracy as to details in the claims of proof." *State* v. *Whiteside*, 148 Conn. 208, 215; Maltbie, Conn. App. Proc. § 145. There was competent evidence to support the paragraphs attacked. The defendant also seeks to add numerous paragraphs claiming that the facts appearing therein were admitted or undisputed or necessary properly to present the questions of law claimed as error. In examining this assignment of error, we conclude that the finding furnished a fair and adequate basis for testing the errors in law claimed to have been made by the court in the charge, and therefore no corrections are warranted. See *Turner* v. *Scanlon*, 146 Conn. 149, 151; *Daly Brothers, Inc.*

v. *Spallone,* 114 Conn. 236, 243; *State* v. *Gargano,* 99 Conn. 103, 106.

The state offered evidence to prove and claimed to have proved that Edward Suhovski was employed by the Bristol Brass Company. On December 17, 1965, he was arrested. At the time of his arrest, he had in his possession a notebook containing a record of payments for number bets by fellow employees. He also had in his possession $80 which he had collected from people betting on the numbers. On the same day, he gave the Bristol police a blue notebook containing a record of the numbers played since 1963 by fellow employees. The blue notebook also contained the names of bettors and the numbers upon which they bet. Such numbers consist of three digits, and the winning number was determined by the last three digits of the daily treasury balance published in the newspaper. The bets were accepted by Suhovski for a five-day bet, from Monday through Friday in each week. Suhovski had collected the $80 on December 17, 1965, from fellow employees, and the money was for the defendant. It represented bets to be made for the following week. On the Monday prior to December 17, Suhovski had turned over to the defendant his collections for number bets being played during the week ending December 17. The money so turned over to the defendant amounted to $161, which represented the amount collected less the 10 percent received by Suhovski for collecting the bets. Suhovski had been collecting for the defendant for over two years. During this period, the defendant gave Suhovski the moneys with which to pay off a winner. Suhovski also played the numbers and, eight months prior to December, 1965, had a winning bet and had been paid off by the defendant. Suhovski's nickname was "Bullett," and this name appeared in the blue notebook next to the numbers he had bet on.

Sergeant Stanley Barton is a police officer of the Bristol police department and for the prior fourteen months had been investigating gambling in Bristol. He was familiar with the game of chance known as the treasury balance lottery and, after examining both the brown and the blue notebooks, he was of the opinion that they contained treasury balance records, a form of lottery. He was further of the opinion that Suhovski was a runner. A runner is one who collects money played upon the numbers and then turns it over to a lieutenant, who in turn transfers the money to a banker or higher-up. The defendant, after his arrest, denied that Suhovski was working for him in the treasury balance lottery. No promise of leniency was made to Suhovski in his making of a confession implicating the defendant or in his testifying at the trial.

The defendant offered evidence to prove and claimed to have proved the following facts: At the time Suhovski testified, he had a balance of fifty-six days of a sixty-day jail sentence to serve and a fine of $500 to pay. Suhovski, following his arrest, was charged with policy playing, entered a plea of guilty and was sentenced. Prior to testifying in this case, Suhovski attended a conference with his attorney and three prosecuting attorneys for fifteen or twenty minutes, at which time this case was discussed and Suhovski's appeal, sentence and fine were claimed not to have been discussed. Suhovski claimed that at no time had the police made any promises to him or threatened him and that he signed a statement of his own free will. Suhovski was not represented by an attorney until he filed his appeal. He denied telling his attorney that his plea of guilty was induced by promises of leniency, reward or immunity, but he did tell his attorney that his sentence was unreasonable in view of his cooperation with the police. When he testified at

this trial, he was represented by an attorney. A defendant's exhibit is a motion to open the judgment in *State* v. *Edward Suhovski*, Circuit Court, Seventeenth Cir., No. CR 17-4677 (Apr. 14, 1966), signed by Suhovski's attorney, and the motion sets forth that Suhovski's confession was induced by promises and was not a product of a free and unconstrained choice and further that his sentence was harsh, unfair and unreasonable in view of his cooperation with the police. Another exhibit of the defendant is the appeal taken by Suhovski, incorporating much of the matter set forth in his motion to open. Suhovski claimed that he saw the defendant every Monday during the summer of 1965, although he did not write action for fourteen weeks during this period. While Suhovski's attorney stated in the motion to open that Suhovski had no record, he had in fact been convicted of breach of the peace. When the defendant was apprehended, nothing was found on his person and he denied that Suhovski worked for him. During the trial, Suhovski sat in court with Vincent Palais, a fellow employee whom the state announced it would call as a witness. Suhovski claimed that he did not testify against the defendant in the hope that his sentence or fine would be modified.

The defendant claims numerous errors in the court's rulings on evidence. In many instances, the defendant has failed to conform with the requirements of §§ 1006 and 989 of the Practice Book. Under our rules, an assignment of error relating to rulings made during the trial on the admission or rejection of testimony shall refer to an exhibit which shall be annexed and which shall set forth the question, the objection, the answer, if any, and the exception. The defendant has merely set forth, in narrative form, without questions and answers, his version of what he claims occurred. Further-

more, where questions and answers do appear, they are frequently so limited that a proper understanding of the ruling is difficult. We have, however, reviewed the errors which were properly assigned, set forth in the defendant's brief and seriously argued.

Two notebooks belonging to Suhovski and purporting to contain records of bets taken by Suhovski were received in evidence over the defendant's objection. The defendant's basic claim is that the recorded betting activities antedated the date charged in the information and therefore the evidence was remote and prejudicial, since it tended to show other crimes. As a general rule, conviction of other crimes is inadmissible to prove guilt of the crime charged. *State* v. *Fredericks,* 149 Conn. 121, 125; *State* v. *Ferrone,* 96 Conn. 160, 173. But there are exceptions. Evidence which may tend to show the commission of crimes other than the one in issue is not objectionable if the evidence is relevant and material in proving the accused guilty of the crime charged. "Such evidence, when offered in chief, violates the rule of policy which forbids the State initially to attack the character of the accused, and also the rule of policy that bad character may not be proved by particular acts. . . . On the other hand, evidence of crimes so connected with the principal crime by circumstance, motive, design, or innate peculiarity, that the commission of the collateral crime tends directly to prove the commission of the principal crime, or the existence of any essential element of the principal crime, is admissible." *State* v. *Gilligan,* 92 Conn. 526, 530; *State* v. *Chapman,* 103 Conn. 453, 481; *State* v. *Fredericks,* supra, 124; 1 Wharton, Criminal Evidence (12th Ed.) § 240. Furthermore, it is not essential in a criminal prosecution that the crime be proved to have been committed on the precise date alleged,

for ordinarily the prosecution may prove the crime charged at any time prior to the date of the complaint and within the period fixed by the Statute of Limitations. *State* v. *Lorusso,* 151 Conn. 189, 191.

Sergeant Barton, having previously testified as to the method, operation and technique involved in policy playing, was asked: "From your experience as a police officer, could you tell us—and from the records you examined in this particular case, would you tell us whether it exists as an organized type of activity?" The defendant objected on the grounds that he was being tried on a single charge and not for organized crime and that the question called for an answer which could be prejudicial. The state claimed relevancy on the ground that the witness' prior testimony relating to the general mechanics involved in policy playing afforded a basis for the question. The court inquired of the prosecutor whether he was referring to the defendant. The prosecutor informed the court that his inquiry did not refer to the defendant but only related to the general practice in the Bristol area. The court then overruled the objection, and the witness answered: "Yes, this is organized."

The relevancy of such evidence was doubtful, since it did not tend to establish any matter in issue. 2 Wharton, Criminal Evidence (12th Ed.) § 515. The real question is whether the admission of the evidence constitutes reversible error. We think not. "The appellant is entitled to a trial according to law, not necessarily free from all error, but from substantial error; in determining whether irregularities in a criminal trial are grounds for reversal, the test to be applied is not whether there were some irregularities, but whether the defendant had a fair and impartial trial." 5 Am. Jur. 2d 220,

Appeal and Error, § 778. The ruling must be both wrong and harmful. *DeCarufel* v. *Colonial Trust Co.*, 143 Conn. 18, 21. Since the question was not directed to the defendant's activities, it added little or no probative force to the evidence already in the case. The scales, in this case, were not delicately balanced between guilt and innocence, for the verdict was amply supported by substantial evidence of guilt. The jury were told in the charge that the guilt or innocence of the defendant must depend on their evaluation of the testimony of Suhovski and that two questions were involved: (1) Was Suhovski engaged in policy activities? (2) If he was so engaged, was he acting for the defendant? Further on, the jury were instructed that if they could not accept the testimony of Suhovski a verdict of not guilty must be returned. The defendant could not have been harmed by the testimony, if it was improperly admitted. See *Hope* v. *Valente*, 86 Conn. 301, 307. The ruling of the court could hardly have affected the verdict. See *State* v. *Beaudet*, 53 Conn. 536, 539; *State* v. *Goldberger*, 118 Conn. 444, 454; *State* v. *Fahy*, 149 Conn. 577, 588, rev'd, 375 U.S. 85 (for the reason that the harmless error rule as there applied was in conflict with the fourteenth amendment); 5 Am. Jur. 2d, Appeal and Error, § 776. A new trial is not required if an error has not materially injured the appellant. General Statutes § 52-265. The defendant cites *State* v. *Ferrone*, 97 Conn. 258, 267, in support of his contention. But in *Ferrone* error was found because evidence was admitted, though later excluded, that the accused had just come out from doing seven years in Sing Sing prison. Here, no claim was made nor evidence offered that the defendant participated in organized crime.

At the time of Suhovski's arrest, a billfold containing $80 was found on his person. Suhovski,

while on the witness stand, identified it and testified that the money was obtained from individuals who were marked down in a notebook previously received in evidence. These individuals were engaged in playing the numbers. The defendant objected to the introduction of the billfold and the money but stated no claim of inadmissibility other than that there was no basis for their introduction. The court's ruling under these circumstances cannot be held to constitute reversible error. *Casalo* v. *Claro,* 147 Conn. 625, 630.

Sergeant Barton was asked by the prosecutor if he had an opinion, from his examination of the records and observation of Suhovski on the day in question, what role Suhovski played in the policy racket. The objection then raised by the defendant was that any answer given would, in effect, be a usurpation of the jury's function to determine what significance, if any, should be attributed to Suhovski's activity. The defendant was overruled, and the witness answered: "Yes. Suhovski is a runner." That Barton was an expert on the subject matter of the numbers game was shown by his qualifications. The court had a wide discretion in admitting his testimony on a subject on which the jury might have little knowledge. "The situation was of such a nature as to require an expert to express an opinion on the precise question upon which the . . . [jury] ultimately had to pass." *State* v. *Johnson,* 140 Conn. 560, 563; *State* v. *DelVecchio,* 145 Conn. 549, 553. The court did not abuse its discretion in admitting the testimony.

The defendant also contends that on several occasions the state asked leading questions on direct examination. "Whether the trial judge shall permit the asking of leading questions is within his discretion, and his rulings thereon will stand unless it

appears that his discretion has been abused by permitting so many questions of this character as to make it clear that prejudice has resulted from their admission." *Wright* v. *Blakeslee,* 102 Conn. 162, 168. No such abuse of discretion is shown here.

The defendant further claims error in the prosecuting attorney's refusal to let him examine certain papers used by the witness Suhovski to refresh his recollection. The court examined the papers and concluded that the statements did not contradict the testimony of the witness. At the request of the defendant, the papers were marked for identification. The defendant had the right to examine these papers. *State* v. *Grimes,* 154 Conn. 314, 322. The rule applies to a memorandum consulted for refreshment before trial and brought by the witness into court. 3 Wigmore, Evidence (3d Ed.) § 762. But the defendant did not request the court to rule on the matter, and in the absence of a ruling, objection and exception the matter is not subject to review. See *State* v. *Grimes,* supra, 323.

After Suhovski had been arraigned, had pleaded guilty and had been sentenced for policy playing, he obtained an attorney. His attorney then filed a motion to open the judgment, claiming that Suhovski's confession was not voluntary but was induced by promise, advantage, reward and immunity and, further, that the sentence was harsh, unfair and unreasonable in view of Suhovski's cooperation with the police. The motion was denied, and an appeal was filed. The pleadings in those proceedings were executed in the name of Suhovski by his attorney. They were offered by the defendant for the purpose of impeaching the credibility of Suhovski, who had testified on direct examination that his statements to the police were voluntary. The pleadings were admitted in evidence with cer-

tain deletions, and the court properly explained to the jury the limited purpose for which the evidence was offered and was being received. In considering the evidence, the court further stated that the jury should consider on the evidence whether the witness had approved or authorized the statements in the pleadings. Such an instruction was also incorporated in the charge. The defendant objected both to the instruction and to the charge on this point. He claims that the allegations in the pleadings unequivocally bound the witness, on the theory that judicial admissions in pleadings conclusively bind the pleader. See *DelVecchio* v. *DelVecchio,* 146 Conn. 188, 191; *Kanopka* v. *Kanopka,* 113 Conn. 30, 38; *Bartolotta* v. *Calvo,* 112 Conn. 385, 395. The defendant, however, misconstrues the purpose for which he offered the evidence. It was not offered for any confessionary purpose, since it related to no matter involved in any prior trial affecting the interest of the defendant. Furthermore, the pleadings arose after a conviction and came into being solely for the purposes of an appeal. The evidence was offered to impeach credibility and in that respect was not conclusive against the pleader. The weight to be given the evidence was for the jury to determine as in the case of other evidence. *Wilcox* v. *Downing,* 88 Conn. 368, 375; *Loomis* v. *Norman Printers Supply Co.,* 81 Conn. 343, 350. The court was correct in its treatment of the evidence.

Further errors are claimed in the court's charge. The court charged, inter alia, that a reasonable doubt is one founded on the evidence or lack of evidence in the case. From this part of the charge, the defendant argues that the jury could have understood that the defendant must produce evidence of his innocence and that his failure to testify raised a reasonable doubt as to his innocence. In short, the defendant contends that the instructions

negated the law that the defendant does not have to prove his innocence and nullified the prior part of the charge wherein the court instructed the jury that it was not incumbent upon the defendant to prove his innocence. We think the attacked instruction is fairly to be construed, and would be understood by the jury, as meaning that they should consider want of evidence, if any, as it related to the state's burden of proof. Even if the instruction were susceptible of the construction claimed by the defendant, we do not believe it could have had a prejudicial effect, in view of the repeated and accurate statements of the guiding principle relative to the state's burden of proof. At no time did the court comment on the defendant's failure to testify. The charge must be considered as a whole in determining whether the claimed error was harmful to the defendant. *Stanco* v. *H. L. Green Co.*, 127 Conn. 422, 425. A statement will not be regarded as a reversible error unless it is reasonably probable that the jury would have been misled by it. *McMahon* v. *Bryant Electric Co.*, 121 Conn. 397, 406. Since the charge in its entirety was sufficiently correct in law, adapted to the issues and ample for the guidance of the jury, it met the required test. *DeCarufel* v. *Colonial Trust Co.*, 143 Conn. 18, 20.

The defendant also claims error in the court's adjourning the jury until the next jury day. The jury retired to commence their deliberations at 3:44 p.m. on Friday, March 4, and after several hours the court was advised that the jury were unable to arrive at a verdict and had expressed a desire to continue their deliberations on the next jury day, Tuesday, March 8. The court informed counsel of this request, and the defendant objected to a continuance on the ground that the jury would have "too much time to think about the case until next Tuesday." Whereupon the jury were returned

to the courtroom and the foreman informed the court that the jury had not reached an agreement and wished to adjourn until the following Tuesday. The court then cautioned the jury on discussing the case and adjourned the case until the following Tuesday. "The conduct of the trial must necessarily be left largely to the discretion of the presiding judge, a discretion which in its very nature cannot be made the subject of review by this court, except in a clear case of the abuse of that discretion." *McKiernan* v. *Lehmaier,* 85 Conn. 111, 119; 4 Am. Jur. 2d, Appeal and Error, § 84. The court acted well within its discretion in adjourning the trial until the next jury day.

When the jury returned on Tuesday, the court briefly recharged them. The defendant claims error because the court in the recharge instructed the jury that the question for them to determine was that of the guilt or innocence of the defendant and that they were to determine where the truth of the matter lay. The defendant contends that these portions were prejudicial because the court did not also define reasonable doubt. The entire charge must be read as a whole. *Stanco* v. *H. L. Green Co.,* supra. Earlier in the charge, as delivered on Friday, the court correctly defined reasonable doubt. There was no reason to discuss this subject again. *Caschetto* v. *Silliman & Godfrey Co.,* 126 Conn. 22, 26, does not support the defendant's contention, for there the court charged the jury in contradictory language. Nor was the court in error in charging the jury further. *Buck* v. *Robinson,* 128 Conn. 376, 378.

Further error is claimed as to the legality of the sentence. The term imposed was within the limits fixed by statute. This court, therefore, has no discretionary jurisdiction in the matter. *State* v. *Pam-*

*bianchi,* 139 Conn. 543, 548; *State* v. *Mendill,* 141 Conn. 360, 363; *State* v. *Horton,* 132 Conn. 276, 278.

Finally, the defendant claims error in the denial of his motion for a directed verdict, his motion to set aside the verdict, and his motion for judgment notwithstanding the verdict. Such rulings are reviewed on the evidence alone and not on the finding. *State* v. *Amendola,* 152 Conn. 166, 168; *Kingston* v. *Blake,* 151 Conn. 714, 715. While we have reviewed the evidence, the defendant's basic contention is that the testimony of Suhovski, the principal witness for the state, was of doubtful credence. It cannot be said, however, that if Suhovski's testimony was credited by the jury it, together with other evidence, was inadequate to support a verdict of guilt beyond a reasonable doubt. The court committed no error in its rulings on the motions.

There is no error.

In this opinion KOSICKI and LEVINE, Js., concurred.